UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICHOLAS A.N. CHARLES,

                    Plaintiff,

          -v.-

UNITY WIRELESS,

                    Defendant.

24 Civ. 3461 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Nicholas A.N. Charles, who is proceeding *pro se*, brought this action against Defendant Unity Wireless ("Unity") for allegedly misallocating his benefits provided by the Affordable Connectivity Program ("ACP"), a now-obsolete Federal Communications Commission ("FCC") initiative that gave discounts on internet services and devices to low-income households.  In his operative pleading, the Second Amended Complaint (the "SAC"), Mr. Charles claimed that Unity violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), committed wire fraud, and embezzled FCC funds. Before the Court is Unity's motion to dismiss the SAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons set forth below, the Court grants the motion.

**BACKGROUND**[1]

## A.    Factual Background

On December 31, 2023, Plaintiff Nicholas A.N. Charles applied to Defendant Unity Wireless for a tablet through the Affordable Connectivity Program, a federal internet affordability program that ran from December 2021 to June 2024.  (SAC 3; PMC Tr. 7; *see* Saleh Decl., Ex. A; *see generally* FED. COMMC'NS COMM'N, AFFORDABLE CONNECTIVITY PROGRAM HAS ENDED FREQUENTLY ASKED QUESTIONS (FAQS) (2024), https://www.fcc.gov/sites/default/files/ACP-FAQs-Post-ACP-Ending.pdf).  Unity approved the application, created an account for Mr. Charles, and provided him with a tablet as well as a new phone number for making and receiving calls with that device.  (SAC 3; *see id.*, Ex. B; PMC Tr. 8).  Unbeknownst to Mr. Charles, however, the creation of the Unity

---

[1]    This Opinion draws its facts from the Second Amended Complaint (the "SAC" (Dkt. #32)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court also considers certain exhibits attached to the SAC ("SAC, Ex. [ ]" (Dkt. #32)), which are incorporated by reference in the SAC.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference in or integral to a complaint).  In addition, the Court relies, as appropriate, on the transcript of the November 13, 2024 pre-motion conference ("PMC Tr." (Dkt. #24)); the declaration of Yazan Saleh in support of Unity's motion to dismiss ("Saleh Decl." (Dkt. #36)) and the exhibit attached thereto ("Saleh Decl., Ex. A"); and the declaration of Joseph P. Bowser in support of Unity's motion to dismiss ("Bowser Decl." (Dkt. #37)) and the exhibit attached thereto ("Bowser Decl., Ex. B").  The Court notes that Mr. Charles also filed certain exhibits attached to his opposition.  (*See* Dkt. #50).  Because those documents were filed long after the SAC and were not incorporated by reference, the Court need not consider them.  *See McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (limiting the scope of review to "facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference").

For ease of reference, the Court refers to Unity's memorandum of law in support of its motion to dismiss as "Unity Br." (Dkt. #35); Mr. Charles's declaration in opposition to Unity's motion as "Pl. Opp." (Dkt. #50); and Unity's memorandum of law in reply as "Unity Reply" (Dkt. #51).

account led to the cancellation of his existing account and phone number associated with Assurance Wireless ("Assurance"), a different telecommunications provider.  (SAC 3; PMC Tr. 7-8).  Because Mr. Charles used his old phone number to maintain his livelihood, he wished to revive his Assurance account and have his ACP benefits transferred back to Assurance.  (PMC. Tr. 7-8).  Heeding Mr. Charles's request, Unity transferred him out of its free internet program.  (SAC, Ex. B).

According to Mr. Charles, instead of allowing him to return to his Assurance account, Unity allegedly took Mr. Charles's ACP benefits, refused to release them back to Assurance, and "de-enrolled" Mr. Charles from the ACP at some point after the program stopped accepting new enrollments.  (SAC 3; PMC Tr. 9).  As a result, Mr. Charles claimed that he "lost everything" — his phone number, his internet, and his job — as of March 2024.  (PMC Tr. 10-11).  In addition, after the ACP officially shut down, Unity allegedly shared Mr. Charles's data with a third-party known as Excess Telecom ("Excess"), which then submitted two unauthorized applications for telecommunications service on Mr. Charles's behalf in April 2024.  (SAC 3; PMC Tr. 11-13, 34).  Mr. Charles claimed that those applications were made without his knowledge or consent, which in turn led him to lose his position and employment at Trinity Enterprises.  (FAC 3; PMC Tr. 25).  From his perspective, Unity "deliberately sabotaged [his] account, of nearly 14 years, with Assurance Wireless in furtherance of their embezzlement of the FCC's Affordable Connectivity Program funds."  (*Id.*).

**B.     Procedural Background**

Before coming to federal court, Mr. Charles filed at least three complaints with the FCC in February and March of 2024.  (PMC Tr. 15; *see* Bowser Decl., Ex. B).  One of the complaints, which was filed on March 19, 2024, accused Unity of removing Mr. Charles from the ACP and sought to release his ACP benefits back to Assurance.  (Bowser Decl. ¶ 3; *id.*, Ex. B).

Shortly thereafter, on May 3, 2024, Mr. Charles filed a complaint against Unity and Assurance in this Court under Section 207 of the Communications Act of 1934, 47 U.S.C. § 207.  (Dkt. #1).  In the complaint, Mr. Charles alleged that Unity de-enrolled him from the ACP and caused him to lose his ACP benefits, and that Assurance disconnected his phone after he activated a new number in March 2024.  (*Id.*).  He sought $10 million in compensatory and punitive damages.  (*Id.*).  In response, Unity filed a pre-motion letter in anticipation of moving to dismiss the complaint (Dkt. #13), which Mr. Charles opposed (Dkt. #21-22).

On November 13, 2024, the Court held a pre-motion conference, during which it dismissed Assurance as a defendant from the case upon Mr. Charles's request.  (Dkt. #23; PMC Tr. 5).  Mr. Charles also stated that he filed complaints about Unity with the FCC, although it became clear later on that Mr. Charles brought his federal lawsuit because of the allegedly unauthorized applications that were filed on his behalf, and not because of his de-enrollment from the ACP.  (PMC Tr. 19-20).  Given that Mr. Charles's original complaint

4

made no mention of the unauthorized applications, the Court gave Mr. Charles an opportunity to amend his complaint.  (PMC Tr. 44).

On February 7, 2025, Mr. Charles filed his First Amended Complaint (the "FAC"), in which he repeated his allegations about the termination of his ACP benefits but also added new allegations about the unauthorized applications. (Dkt. #27).  Specifically, Mr. Charles claimed that Unity released his data to Excess, which then submitted the two applications.  (*Id.*).  In addition, Mr. Charles stated that he previously worked as an Executive Operations Officer for Trinity Enterprises, a position that required "a functioning, active cell phone with unlimited data."  (*Id.*).  Similar to his original complaint, the FAC alleged claims under the Communications Act and the relevant regulations.  (*Id.*).  On February 25, 2025, Unity filed another pre-motion letter highlighting the deficiencies in Mr. Charles's amended complaint and expressing its intent to move to dismiss.  (Dkt. #29).  At the same time, Unity consented to giving Mr. Charles another opportunity to amend.  (*Id.*).  The Court thus gave Mr. Charles a second chance to amend his complaint, and it set a briefing schedule for Unity's motion to dismiss.  (Dkt. #31).

On April 3, 2025, Mr. Charles filed his Second Amended Complaint (the "SAC"), the operative pleading in this case.  (Dkt. #32).  The SAC largely repeated the factual allegations in the previous complaints, but it dropped the original claims under the Communications Act and instead brought new legal claims under RICO, the federal wire fraud statute, and N.Y. Gen. Bus. Law § 349, which outlaws deceptive business acts and practices.  (SAC 2, 4).  The

5

SAC also alleged damages to reputation, loss of credibility, loss of future earnings potential, corporate sabotage, and tortious interference, which the Court construes as common-law claims. (*Id.* at 4). Unity filed its motion to dismiss the SAC and supporting papers on April 24, 2025. (Dkt. #33-37). Mr. Charles filed his opposition on May 22, 2025. (Dkt. #50). And on June 5, 2025, Unity filed its reply. (Dkt. #51).[2]

### DISCUSSION

**A.    Applicable Law**

Under Rule 12(b)(1), a party may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). Certain statutes, for example, may impose jurisdictional bars that strip the court of its ability to adjudicate specific claims. *See, e.g.*, *Nouritajer* v. *Jaddou*, 18 F.4th 85, 88-89 (2d Cir. 2021) (per curiam). In addition, Article III's constitutional limit of federal-court jurisdiction to actual cases and controversies requires a plaintiff to "have standing to pursue his claims." *Bellocchio* v. *Garland*, 614 F. Supp. 3d 11, 15 (S.D.N.Y. 2022). Standing consists of three prongs: the plaintiff "must

---

[2]    On August 14, 2025, Plaintiff filed a motion to consolidate this case with two other related cases before the Court, Case No. 24 Civ. 9181 (the "*Excess Telecom* Action") and Case No. 25 Civ. 702 (the "*T-Mobile* Action"). (Dkt. #53). After receiving Defendants' position letters in each of the three cases, the Court denied the motion to consolidate on September 11, 2025. (Dkt. #58). The Court notes that motion practice is ongoing in the two related cases.

demonstrate that he has (i) suffered an injury in fact, (ii) that is fairly traceable to the challenged conduct of the defendant, and (iii) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 338 (2016)).

"On a Rule 12(b)(1) motion, the challenge to subject-matter jurisdiction may be facial or fact-based." *O'Shea* v. *P.C. Richard & Son, LLC*, No. 15 Civ. 9069 (KPF), 2017 WL 3327602, at *4 (S.D.N.Y. Aug. 3, 2017). In resolving a facial motion, which is based solely on the complaint and its attachments, the district court must "accept[ ] all factual allegations as true and draw[ ] all reasonable inferences in favor of the plaintiff asserting jurisdiction." *Id.* In contrast, the court may consider evidence outside the pleadings when it is presented with a factual challenge. *Id.* To oppose a fact-based motion, the plaintiff "must come forward with evidence of [his] own to controvert that presented by the defendant." *Equal Vote Am. Corp.* v. *Pelosi*, No. 19 Civ. 777 (KPF), 2020 WL 1467319, at *3 (S.D.N.Y. Mar. 26, 2020) (internal quotation marks omitted) (quoting *Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017)). Finally, "[w]hen a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, the [c]ourt must consider the Rule 12(b)(1) motion first." *Bellocchio*, 614 F. Supp. 3d at 17 (internal quotation marks omitted) (quoting *Reliability Inc.* v. *Doki*, No. 20 Civ. 7109 (KPF), 2021 WL 3408589, at *6 (S.D.N.Y. Aug. 4, 2021)).

**B.     The Court Dismisses the Case for Lack of Subject Matter Jurisdiction**

    **1.     Plaintiff's ACP Claims Are Barred by Section 207 of the Communications Act**

Under 47 U.S.C. § 207, "[a]ny person claiming to be damaged by any common carrier … may either make complaint to the [Federal Communications] Commission … or may bring suit … in any district court of the United States of competent jurisdiction."  Nevertheless, Section 207 is clear that it "permits an injured party to seek relief either in federal court or before the FCC, but not in both."  *Digitel, Inc.* v. *MCI Worldcom, Inc.*, 239 F.3d 187, 190 (2d Cir. 2001) (per curiam).  In other words, Section 207 contains a forum-selection rule that precludes the filing of any lawsuit in federal district court if a party has already made a complaint to the FCC — regardless of whether it is formal or informal — as long as there is "a nexus between the claims in the two forums."  *Id.* at 190-91.

Mr. Charles's ACP claims in the SAC are barred by Section 207's forum-selection rule because he has already brought those claims before the FCC.  Indeed, on March 19, 2024, in at least one complaint made to the FCC predating the filing of any federal lawsuit, Mr. Charles accused Unity of de-enrolling him from the ACP and preventing him from using his ACP benefits with Assurance.  (Bowser Decl. ¶ 3; *id.,* Ex. B; *see also* PMC Tr. 18 (Mr. Charles explaining that all three of his FCC complaints addressed "[t]he ACP benefit not being applied or released")).  Those FCC claims share a clear nexus with the ACP claims in the SAC, in which Mr. Charles alleged that Unity "took Plaintiff's

8

ACP benefit" and "refused to release ACP [b]enefits back to Assurance Wireless." *See Digitel*, 239 F.3d at 191.  (SAC 3).  Therefore, to the extent that Mr. Charles's claims of RICO violations, federal wire fraud, deceptive and improper business practices under New York law, and common-law violations are based on Unity's alleged sabotage of his ACP benefits, this Court lacks the statutory power to adjudicate them and must dismiss those claims for lack of subject matter jurisdiction.[3]

### 2.    Plaintiff Lacks Standing to Pursue Any Remaining Claims Related to Excess's Alleged Applications

In addition to his allegations about Unity's alleged mishandling of his ACP benefits, Mr. Charles also claimed in the SAC that after the ACP program officially ended, Unity released his data to Excess, which then made two applications for telecommunications service without his consent and which in turn caused him to lose his employment at Trinity Enterprises.  (SAC 3; PMC Tr. 25).  As Unity contends in its brief, "[t]he only twist in this latest version of Plaintiff's effort to plead around Section 207 is this bizarre story about Excess." (Unity Br. 11).

---

[3]    In the SAC, Mr. Charles claimed that the Court has federal question jurisdiction based on (i) RICO violations, (ii) federal wire fraud, and (iii) embezzlement of FCC funds.  (SAC 2).  The Court notes that (i) any alleged violations of RICO based on the ACP benefits would be barred by Section 207's forum-selection rule; (ii) there is no private cause of action for the federal crime of wire fraud; and (iii) there is no cognizable federal claim for embezzlement of FCC funds.  *See Zamora* v. *JPMorgan Chase Bank, N.A.*, No. 14 Civ. 5344 (WHP), 2015 WL 4653234, at *2 (S.D.N.Y. July 31, 2015).  Without the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law and common-law claims.  *See Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122-24 (2d Cir. 2006).

"A plaintiff lacks standing if the alleged injury is not fairly traceable 'to the challenged action of the defendant.'" *D.H.* v. *City of New York*, 309 F. Supp. 3d 52, 68 (S.D.N.Y. 2018) (quoting *St. Pierre* v. *Dyer*, 208 F.3d 394, 401 (2d Cir. 2000)).  At the very least, there must be a causal nexus between the defendant's conduct and the plaintiff's injury.  *Id.*  Here, Mr. Charles's purported injury — that is, his termination from Trinity Enterprises — was not caused by Unity's alleged data release to Excess.  According to Mr. Charles, he lost his position at Trinity Enterprises in March 2024.  (PMC Tr. 42).  At the same time, Mr. Charles acknowledged that Unity allegedly released his data to Excess and that Excess made the two unauthorized applications in April 2024. (PMC Tr. 34 (Mr. Charles clarifying that "[b]oth incidents happened in April")). Temporally, it could not be possible for Unity's action in April to cause Mr. Charles's termination in March.  Because Mr. Charles's alleged injury cannot be traced back to Unity's action, he lacks standing to pursue any claims based on Excess's allegedly unauthorized applications.[4]

---

[4]    In Mr. Charles's opposition, he attempts to discuss several enforcement mechanisms that address crimes against federal broadband subsidy programs.  (Pl. Opp. 3).  The Court notes, however, that as a private individual, Mr. Charles cannot bring criminal prosecutions or impose regulatory sanctions on behalf of the FCC.  In addition, the SAC does not raise any viable claims under the False Claims Act.

## CONCLUSION

For the foregoing reasons, Unity's motion to dismiss is GRANTED.  The Court dismisses Mr. Charles's claims in this action without prejudice, either because it lacks jurisdiction to consider them (with respect to the federal-law claims), or because it has declined to exercise jurisdiction over them (with respect to the state-law claims).  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated:   January 20, 2026
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge